Calocerinos v C&S Worldwide Holdings, Inc. (2018 NY Slip Op 04142)





Calocerinos v C&S Worldwide Holdings, Inc.


2018 NY Slip Op 04142


Decided on June 8, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on June 8, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., CARNI, NEMOYER, AND WINSLOW, JJ.


473 CA 17-02106

[*1]STEVEN CALOCERINOS, PLAINTIFF-APPELLANT,
v
C & S WORLDWIDE HOLDINGS, INC., DEFENDANT-RESPONDENT. 






MENTER, RUDIN & TRIVELPIECE, P.C., SYRACUSE (MICHAEL J. BALESTRA OF COUNSEL), FOR PLAINTIFF-APPELLANT. 
BOND, SCHOENECK & KING, PLLC, SYRACUSE (JONATHAN B. FELLOWS OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


 Appeal from a judgment (denominated order) of the Supreme Court, Onondaga County (Donald A. Greenwood, J.), entered March 13, 2017. The judgment, among other things, declared that defendant is entitled to reduce the repurchase price of plaintiff's shares by 30%. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed without costs.
Memorandum: Plaintiff was formerly employed by a subsidiary of defendant as an engineer. The Second Amended and Restated Shareholder Agreement (agreement) between the parties provides, inter alia, that defendant would repurchase plaintiff's shares of defendant's stock when plaintiff left defendant's employ. The agreement further provides that, if plaintiff engaged in conduct that was in conflict or competition with defendant's business, within two years after leaving defendant's employ, defendant would reduce the repurchase price for plaintiff's shares by 30%. The agreement lists illustrative examples of the types of conduct that would result in a reduction in the repurchase price, but it clearly states that the conflicting or competitive conduct is not limited to those examples.
After plaintiff left defendant's employ, defendant concluded that plaintiff was engaged in conduct in competition with defendant's business and reduced the repurchase price for plaintiff's shares accordingly. Plaintiff thereafter commenced this action asserting two causes of action, one for breach of contract and another seeking a declaration that defendant had violated the terms of the agreement. Plaintiff moved for summary judgment on the complaint, and defendant cross-moved for summary judgment dismissing the complaint. Supreme Court denied the motion, in effect granted the cross motion, and declared that defendant is entitled to reduce the repurchase price for plaintiff's shares by 30%. We affirm.
We reject plaintiff's contention that the court erred in interpreting the agreement. "As a general rule, courts must enforce shareholder agreements according to their terms" (Matter of Penepent Corp., 96 NY2d 186, 192 [2001]), and they must "examin[e] the terms of the agreement as a whole and giv[e] a practical interpretation to the language employed" (Matter of El-Roh Realty Corp., 48 AD3d 1190, 1192 [4th Dept 2008]). Here, the agreement plainly provides for a reduction of the repurchase price for an employee's shares if the employee, within two years of leaving defendant's employ, "engage[s] in any other business or activity that might conflict or compete with the business or activity of [defendant], and/or of [defendant's] clients or customers, without the express prior written approval of [defendant's] Board of Directors." Plaintiff admitted in an affidavit in support of his motion that he was formerly employed by defendant in Syracuse as "a licensed professional engineer," and that, approximately 27 days after leaving defendant's employ, he "opened an office in Liverpool, New York[,] for the purpose of providing engineering services in the Central New York area." Inasmuch as plaintiff was [*2]engaging in a business that conflicted or competed with defendant's business and he did not have the express prior written approval of defendant's Board of Directors, we conclude that the court did not err in declaring that defendant was entitled to reduce the repurchase price for plaintiff's shares as provided in the agreement.
We reject plaintiff's contention that the illustrative examples of certain types of competitive conduct listed in the agreement were the only types of conduct that could result in a reduction of the repurchase price of his shares. Just after the provision in the agreement stating that an employee, plaintiff in this case, may not "directly or indirectly, engage in . . . any other business or activity that might conflict or compete with the business or activity of" defendant, the agreement further provides that, "[i]n elaboration of the foregoing and not in limitation thereof," certain conduct is specifically prohibited. Plaintiff's proposed interpretation of the agreement gives no effect to the language immediately preceding the illustrative list of prohibited conduct and thus violates the well-settled rule that "a court should not read a contract so as to render any term, phrase, or provision meaningless or superfluous" (Givati v Air Techniques, Inc., 104 AD3d 644, 645 [2d Dept 2013]; see Beal Sav. Bank v Sommer, 8 NY3d 318, 324 [2007]).
We have considered plaintiff's remaining contentions and conclude that they are without merit.
Entered: June 8, 2018
Mark W. Bennett
Clerk of the Court